FILED
2011 Jan-04  AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KIMBERLY M. CALVERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-2601-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Kimberly M. Calvert, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment.  In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform light work with the restrictions.  [R. 15].  Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."

McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as

true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

## DISCUSSION

The ALJ found that the claimant has the following severe impairments: affective disorder, history of traumatic brain injury, diabetes, obesity, and Grade I spondylolisthesis[1] with a degenerative disc at L4/5. [R. 10]. The plaintiff's medical problems started in June 2003 after she was involved in a motor vehicle accident where she was knocked unconscious. A July 23, 2003 MRI of her brain was essentially normal, but Christopher C. LaGanke, M.D., diagnosed post-concussion syndrome. [R. 175, 239]. Dr. LaGanke noted:

> She was confused for several hours after the accident and has mild residual confusion. She states that she is not able to process information very fast. Now she has light sensitivity and difficulty watching TV or driving and being able to process information. Often she will be holding a pen or fork and not know exactly how to hold the utensil. She is unsteady going downstairs and she has to walk one step at a time. She still has some insomnia and is very emotional. She believes that her right leg is acting clumsy [sic].

[R. 176].

By April 7, 2005, her treating physician, Phillip Freeman, M.D., noted that, "She continues to have problems with her head. It actually had gotten better and now

---

[1] Spondylolisthesis is defined as "forward displacement of one vertebra over another." Dorland's Illustrated Medical Dictionary 1567 (27th Edition).

she's gotten suddenly worse." [R. 320].  Dr. Freeman ordered a second MRI on May 5, 2005, which showed mild periventricular chronic ischemic changes, especially involving the frontal lobes, but no evidence of demyelinating process, brain contusion or segmental infarct. [R. 322].  Dr. Freeman treated the plaintiff for left foot pain, right wrist pain with swelling, left leg pain, bursitis, crying spells, obesity, depression and cognition problems.  On April 10, 2006, Dr. Freeman thought that her right arm pain was "probably" early reflex sympathetic dystrophy syndrome secondary to trauma. [R. 344].

On April 27, 2006, Dr. Freeman wrote a "To Whom It May Concern" letter that stated:

> Ms. Calvert has been a long-term patient of mine who was injured a few years ago in an automobile accident which caused her to have significant cognitive dysfunction.  I consider her to be totally and permanently disabled from substantial gainful employment or activity.

[R. 347].  On January 11, 2007, Dr. Freeman completed a Physical Capacities Evaluation in which he stated the plaintiff could lift five pounds or less occasionally, sit for one hour and stand and walk for one hour in an eight-hour day. [R. 383].  On a Clinical Assessment of Pain form, Dr. Freeman noted that pain is present to such an extent as to be distracting to adequate performance of daily activities or work, physical activity would greatly increase her pain, and drug side effects would be expected to be severe. [R. 384-385].  His assessment for fatigue/weakness was the same. [R. 386-387].  Dr. Freeman noted marked or extreme limitations in all areas. [R. 388-389].

On December 10, 2007, Dr. Freeman again completed a Physical Capacities Evaluation in which he had the same opinion as the earlier evaluation. However, now he thought her pain was intractable, physical activity would result in bed rest and medication, and drug side effects would be severe. [R. 442-443]. His assessment of fatigue/weakness was the same. [R. 444-445]. He noted marked or extreme limitations in all areas. [R. 446-447].

The Commissioner sent the plaintiff to Jack L. Bentley, Jr., Ph.D. for a consultative psychological evaluation. She told Dr. Bentley her symptoms were short-term memory loss, depression, crying, fatigue and an inability to concentrate. [R. 348]. Dr. Bentley diagnosed congnitive disorder, NOS, depressive disorder, NOS, and traumatic brain injury. [R. 350]. Dr. Bentley thought that she "is obviously experiencing significant impairment in both her short-term memory and concentration" and that "she would have obvious difficulty sustaining any tasks that require her to maintain her attention span and persistence of pace over a reasonable length of time." [R. 351].[2]

The ALJ gave little weight to the opinion of treating physician Freeman:

> The opinion expressed is quite conclusory, providing very little explanation
> of the evidence relied on in forming that opinion.  Furthermore it is in direct
> conflict with the doctor[']s own treatment records and his opinion that she
> was doing much better and he thought she would continue to improve.

[R. 17]. The ALJ said that Dr. Freeman's January 2007 Physical Capacities Evaluation is unsupported by the objective medical evidence:

---

[2] The ALJ gave significant weight to Dr. Bentley's opinion.

8

> The claimant had not [had] mental health treatment. Dr. Freeman stated that the claimant cannot bend but the claimant drives a car. He stated that she can only occasionally lift less than five pounds, but she opens car doors, [and has] regular activities of daily living. He further stated that she has drug side effects but this was never mention[ed] and [in] fact the evidence was just the opposite. While he opined severe limitations his medical records show improve[ment] with medications and that her symptoms are not severe.

[R. 18] The ALJ also gave little weight to Dr. Freeman's December 2007 opinion:

> This opinion is not supported by the medical records and not even supported by the doctor[']s own reports and treatment of the claimant. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' request[s] and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such, motive, [sic] they [sic] are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

[Id.].

The ALJ's reasons for rejecting Dr. Freeman's opinion are not supported by substantial evidence. Dr. Freeman's opinion was based on his clinical evaluation of the plaintiff.[3] Additionally, Dr. Freeman's opinion was supported by the Commissioner's own consulting examiner, Dr. Bentley, who stated "she would have obvious difficulties

---

[3] See Hale v. Bowen, 831 F.2d 1007, 1012 n. 7 (11th Cir. 1987)(noting that the opinions contained on a PCE form, which instructed the physician to base his opinions on his clinical findings, should be assumed to be the doctor's own professional assessment ). The ALJ had the opportunity to elicit additional medical evidence as to whether the plaintiff suffered from an objective medical condition that could reasonably give rise to disabling pain, but chose not to do so. See Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990)(noting the ALJ improperly analyzed the medical evidence himself rather than eliciting additional medical testimony from physicians).

sustaining any tasks that require her to maintain her attention span and persistence of pace over a reasonable length of time." [R. 351].  Moreover, the ALJ engaged in pure speculation in his rejection of the opinion of the plaintiff's treating physician.  An ALJ is not free to base his decision on such assumptions or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).    Because the ALJ failed to properly refute the testimony of the plaintiff's treating physician, as a matter of law that testimony must be accepted as true.

The ALJ found that the plaintiff is unable to return to her past relevant work.  At the hearing, the plaintiff's attorney questioned Patsy Bramlett, a vocational expert:

> Q:   Ms. Bramlett, I, I think the two sets of forms by Dr. Freedman [sic] are pretty, pretty similar but the one that was already in [the] file from January of '07 indicated that she might be able to deal with only about five pounds, lifting and carrying and sit one hour during a day and stand one hour during a day with other restrictions, but given what I've just recited, if that were to be found credible by the judge

        and supported by the medical evidence, what affect if any would that have on her ability to perform these jobs you've listed?

A:      If the sitting and standing tolerances were a maximum of a total of two hours, either sitting or standing, combining those, [sic] that would be below the full time work level and would rule out anything at all time level of work, [sic] any and all jobs.

Q:      And likewise, his pain forms and fatigue forms are pretty similar too, indicating level C at least on both pain and fatigue in the manner that we're accustomed to reading it on those forms, if again that is, that, those limitations are supported by the medical evidence, what affect if any would they have on her ability to perform substantial gainful activity?

A:      Well based on my recollection of the pain forms, if a, if a level C or a rating of C equates to the moderately severe range of pain level or fatigue side affects from fatigue, that would rule out all work because of the interference of, the persons [sic] ability to concentrate, persist, maintain a pace, keep attendance, maintain a schedule without unscheduled breaks.  If that is all encompassed in that rating on the pain form that would rule out all jobs.

[R. 82-83].  Because the testimony of the plaintiff's treating physician, Dr. Freeman, must be accepted as true, and because of the vocational expert's testimony and that of Dr. Bentley[4], the plaintiff is unable to work.

## CONCLUSION

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff

---

[4] Especially egregious is the Commissioner's selection of Dr. Bentley as a consulting examiner and the ALJ's statement that Dr. Bentley's testimony is worthy of "significant weight," followed by the ALJ completely ignoring Dr. Bentley's testimony that "she would have obvious difficulty sustaining any tasks that require her to maintain her attention span and persistence of pace over a reasonable length of time." [R. 351].

is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 4 January 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.